## PHŒBE ATKINS vs. DAVID NICHOLS.

The defendant had agreed to pay one half the taxes on certain property which should be assessed against and paid by the plaintiff. A tax so assessed was paid by the plaintiff in good faith and with no notice of its illegality, but was afterwards found, in consequence of some irregularity in the proceedings, to be illegal. After a suit was brought to recover half the amount so paid from the defendant, the legislature passed an act validating the proceedings. Held—

1. That the act was operative against the defendant although his relation to the tax was only through his contract with the plaintiff.
2. That it made no difference that the suit was pending when the act was passed.
3. That as the contract was to pay half the taxes assessed against and paid by the plaintiff, there seemed no good reason why the defendant should not be liable even if the tax was illegally laid, the plaintiff having paid it with no knowledge of the illegality.

[Argued January 4th—decided January 25th, 1884.]

ASSUMPSIT for money paid out and expended at the request of the defendant, brought by appeal from a justice to the Superior Court in Litchfield County. The case was referred in that court to a committee, who found a balance of $2.90 due the plaintiff. The defendant remonstrated against the acceptance of the report on the ground that the committee had improperly allowed the plaintiff an item of $53.66, the disallowance of which would have left a balance in the defendant's favor. The court (Sanford, J.,) made the following finding of facts on the remonstrance.

The committee in the adjustment of accounts between the plaintiff and defendant, allowed to the plaintiff the sum of $53.66, being one-half of the sum paid by the plaintiff in the fall of 1875 upon a tax laid in June, 1875, by the Fifth School District of Harwinton, for the purpose of building a new school house, the amount assessed against the plaintiff being $107.32. By a contract between the parties the defendant was obligated to pay to the plaintiff one-half the taxes which should be assessed to her and paid by her upon the land against which the foregoing tax so paid by her was laid, and the same was paid by the plaintiff in good faith, and without knowledge or notice that the same had been illegally laid or that the tax-warrant was illegal. The tax was not legally laid and the tax-warrant issued was not legal. The plaintiff commenced this action June 23d, 1876.

The General Assembly at its January session, 1877, passed a resolution confirming and validating the tax and tax-warrant.

The defendant claimed that the plaintiff at the commencement of the suit had no cause of action against him by

reason of the payment of the tax, and that the committee erred in allowing the same in the plaintiff's favor, and should have reported in favor of the defendant in the sum of $50.76. The plaintiff claimed that the confirming resolution validated the tax and tax-warrant, and that the committee properly allowed the sum in question in his favor.

The defendant claimed that the confirming resolution was a special one, and confined to the inhabitants of the school district, and to the purposes named in the resolution, and ought not to be construed as affecting the rights of the defendant, who was a stranger to the resolution, and that the General Assembly did not intend by the resolution to affect the relations then existing between the defendant and the plaintiff in this action which was pending in court, and asked the court to so decide.

The court overruled the remonstrance and accepted the report of the committee, and rendered judgment that the plaintiff recover of the defendant the sum of $2.90 damages and her costs. The defendant appealed to this court.

*S. P. Newell* and *J. J. Jennings* for the appellant.

1. When the law is changed by a statute pending an action, the law as it existed when the action was commenced must decide the rights of the parties. *Hitchcock* v. *Way*, 6 Ad. & El., 943; *Couch* v. *Jeffries*, 4 Burr., 2460. Retrospective legislation in general has been condemned by the most able jurists as dangerous and unconstitutional, and has never been sustained by our courts except in peculiar cases and with great hesitation. The authorities in support of this proposition are so numerous and well known that there is no need of citing them. This resolution affects, and was intended to affect, only the Fifth School District and the tax-payers in it. While it would make collectible all unpaid taxes on the list, and would confirm such as had been paid, it did not, and could not, reach and affect a contract between a tax-payer and a stranger, that being too remote from its operation. To do this would give the resolution a retrospective effect by construction. " To a statute explicitly

retrospective, to a certain extent and for a certain purpose, the court will not, by construction, give a retrospective operation, to any greater extent or for any other purpose." *Thames Manufacturing Co.* v. *Lathrop*, 7 Conn., 550, 557 ; *Perkins* v. *Perkins*, 7 id., 563 ; *Dash* v. *Van Kleeck*, 7 Johns., 477 ; 1 Kent's Com., 508. To extend the operation of this resolution so as to affect this defendant, who had successfully defended in the court below, will do him most manifest injustice and wrong, and encourage and approve of most mischievous and vicious legislation. The plaintiff having voluntarily paid an illegal tax had no standing in court, and now this court is asked to extend the scope of this act, and to give validity to a void action.

2. The resolution is what is denominated a private act, and was passed upon the petition of certain members of the Fifth School District of Harwinton. "Statutes which concern only particular persons, places or things, are private statutes." 1 Swift Dig., 10. "Special or private acts are rather exceptions than rules, being those which only operate upon particular persons and private concerns." 1 Black. Com., 86. This act, then, being a private act, can affect only those who were parties to the act and in interest, and not strangers. It can not affect this defendant because he was a stranger to it. The parties to the act are ascertained from the act itself to be the Fifth School District of Harwinton and its tax-payers. In 1611, in *Barrington's case*, it was decided in full bench, "that when an act of Parliament was passed affecting certain persons, it should not affect the rights of any other persons." 8 Coke, 271. And *Boswell's case* is cited, that "when an act makes any conveyance good against the king or any other person or persons in certain, it shall not take away the right of any other, although there be not any saving clause in the act." In 1672, in *Lucy* v. *Levington*, Ventris, 175, it was decided "that every man is so far party to a private act of Parliament as not to gainsay it, but not so as to give up his interest," and in 1793, in *Riddell* v. *White*, 2 Anst., 281, that "the legislature can never be understood to have bound

those who were not before them." And again, in *Dawson* .
v. *Paver*, 5 Hare, 415, that " public acts bind all the Queen's
subjects, but private acts do not bind strangers unless by
express words or necessary implication the intention of the
legislature to affect the rights of strangers is apparent in the
act." The reason of the rule is apparent and is founded in
justice. "Every person is considered as assenting to a
public act." Dwarris on Stat., 470. Therefore we find
elaborate rules for giving notice to parties in interest before
a private act can be passed by Parliament. Ibid. And
our own state· has rules to a certain extent to govern in
similar cases. Rev. Stat., 79. Lord ELDON established the
doctrine that private acts are to be regarded as Parliamen-
tary contracts, and as such are to be construed strictly.
*Blakemore* v. *Glamorganshire Canal Co.*, 1 Myl. & Keen, 162.
PARKE, B. reiterates these views. See also opinions of Lord
TENTERDEN and PATTERSON, J., in *Rex* v. *Cumberworth*,
3 Barn. & Ad., 108 ; and of Lord DENMAN in *Rex* v. *Edge-
lane*, 4 Ad. & El., 723. This may be considered to have
settled this question of the strict construction of private
acts, and the rule has not been departed from·since. Surely
a strict construction of the resolution in question would
prevent any application of the same to the case of this defen-
dant. Baron THOMPSON, in *Riddell* v. *White*, quoting Sir
Matthew Hale in *Lucy* v. *Levington*, says: "If an act is
made to settle the dispute between *A* and *B* to land, and
adjudges it to *A*, however strong the words may be without
any saving clause, yet the right of *C*, which is not before
the legislature, is not bound." And KENT thus states the
rule: "Suppose a statute recites that, whereas there was a
controversy concerning land between *A* and *B*, and enacts
that *A* shall enjoy it, this would not bind the interest of
third persons in that land, because they are not strictly
parties to the act, but strangers, and it would be manifest
injustice that the statute should affect them." 1 Kent's
Com., 459. If the interest of *C* in such case cannot be
affected, how much less can the interest of this defendant
be affected after judgment by a private act to which he was

a stranger. This doctrine has been recognized by the courts in this country. *Jackson* v. *Catlin*, 2 Johns., 263 ; *Catlin* v. *Johnson*, 8 id., 432; and in our own state, in *Sherwood* v. *Weston*, 18 Conn., 32. This doctrine is so well established that it is recognized in the elementary text books : " Private acts do not bind or conclude strangers or third parties; and they are not bound to take notice of a private act although there be no saving clause." 1 Kent's Com., 459; Sedgw. Stat. Law, 32; Dwarris on Statutes, 470. A stranger having a contract with a tax-payer could have no notice of this act, and is not affected by it. He is too remote from its operation. Even courts do not take notice of a private act unless pleaded.

*A. P. Bradstreet,* for the appellee.

1. The resolution was designed to be retrospective in the fullest sense. Its retrospective effect, as affecting the relations between the plaintiff and defendant, is no argument against it. The authorities in this state are numerous, showing the effect and operation of such laws. *Goshen* v. *Stonington,* 4 Conn., 210; *Mather* v. *Chapman,* 6 id., 54; *Beach* v. *Walker,* id., 190; *Bridgeport* v. *Hous. R. R. Co.,* 15 id., 495; *Hine* v. *Belden,* 27 id., 391; *Savings Bank* v. *Allen* 28 id., 101; *Taylor* v. *Keeler,* 30 id., 326. The far reaching effect of the law as laid down in *Goshen* v. *Stonington,* as applying to interests and parties apparently remote, is tersely reviewed and summed up in the opinion given in *Savings Bank* v. *Allen.*

2. The statute is *remedial,* and as such ought to receive a liberal construction. 6 Bac. Abr., 389. On page 386 of the same volume it is laid down that " by an equitable construction a case not within the letter of a statute is sometimes holden to be within the meaning, because it is within the mischief for which a remedy is provided."

3. The fact that the suit was pending at the time the resolution was passed by the General Assembly, does not prevent its affecting the rights and obligations of the parties to the suit, as no constitutional question, as to impairing the

Atkins v. Nichols.

obligations of any contract or interfering with vested rights, is involved. *Mather* v. *Chapman*, 6 Conn., 54; *Beach* v. *Walker*, id., 190; *Hine* v. *Belden*, 27 id., 391; *Welch* v. *Wadsworth*, 30 id., 149; *Taylor* v. *Keeler*, id., 324; *Satterlee* v. *Matthewson*, 2 Peters, 380. The very fact that such actions were subject while pending to legislation subsequent to their commencement, led to the passage of the act in 1881 providing that thereafter the passage of an act should not affect any action pending at the time of its passage.

CARPENTER, J. The defendant for a good consideration agreed to pay one half of certain taxes which should be assessed to and paid by the plaintiff. The sum assessed was $107.32, which she paid. There was some defect or informality in the proceedings to levy and collect the tax, which made the assessment and tax-warrant illegal. Without knowledge of the illegality the plaintiff in good faith paid the tax. Subsequently the legislature by a healing act ratified and confirmed the proceedings. The defendant contended that he was not liable for one half of the tax because of such illegality. The court below decided otherwise and the defendant appealed.

The reasons of appeal allege that the court erred in deciding that the validating act ratified and confirmed the assessment and tax-warrant as between these parties, the defendant being a stranger thereto; that this resolution being subsequent to the commencement of the plaintiff's action was not intended to affect the legal rights of the parties to it, but was only intended to affect the rights of the district and the plaintiff; and that the resolution was and is a private resolution, and as such was and is confined to the special purpose named in it. There is but one question presented, and that is whether the resolution affects the defendant; the rest is mere argument.

Before noticing that question we would remark that we are unable to see why the defendant is not liable independently of the validating act. The objection to the tax was technical, or at least of such a character that it did not

affect the equities of the case. We may assume therefore, that it was just and equitable that the plaintiff should pay it. That being so she could not recover it back. *Goddard v. Town of Seymour*, 30 Conn., 394. The defendant is hardly at liberty to take advantage of any technical informality, as his contract did not stipulate that the proceedings should be technically legal and valid; it was simply to pay one half of the taxes assessed to and paid by her. The case seems therefore to be within the letter and spirit of his contract.

But passing this point, we proceed to consider the question discussed by counsel.

The act of the General Assembly validating this tax was not retroactive in any objectionable sense. A past transaction, infected with an infirmity which made it legally invalid, was healed, and made effectual just as those engaged in it, and who were to be affected by it, intended that it should be. It neither made nor destroyed, nor even affected unjustly, any contract. As already suggested, it is very doubtful whether the defendant by the terms of his contract could have taken advantage of the infirmity even if there had been no healing act; but however this may be, such a defense would have been purely technical, and wholly destitute of equity; yea more, it would have been decidedly inequitable. In such a defense, which had its origin in a mistake, no man can have a vested right. A vested right to perpetuate the consequences of a mistake would be an anomaly, and would effectually deny the power of a court of equity and of the legislature to correct the mistake. Of course in this view it makes no difference that the suit was pending when the validating act was passed.

The claim that the defendant is a stranger to the legislative act is equally without foundation. By privity of contract his relation to the tax was such that whatever affected the plaintiff affected him. Therefore when the tax was validated as to her it was validated as to him.

There is no error in the judgment of the court below.

In this opinion the other judges concurred.